**STATE of Tennessee, Appellee,**

v.

**Roger BLACK, William Black, William Thompson, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 29, 1987.

Permission to Appeal Denied by Supreme Court Dec. 28, 1987.

W.J. Michael Cody, Atty. Gen. and Reporter, Kimberly Lynn Anne Hattaway, Asst. Atty. Gen., David Komisar, Asst. Dist. Atty. Gen., Nashville, for State.

J. Mitchell Grissim, Jr., Nashville, for Roger Black.

Nathaniel H. Koenig, Nashville, for William Black.

Al Cocke and Jeffrey A. DeVasher, Asst. Public Defenders, Nashville, for William Thompson.

## OPINION

JAMES C. BEASLEY, Special Judge.

The appellants seek relief from their convictions for rebellion with the intent to escape and resulting life sentences.

On January 16, 1984, Roger Black, William Black and William Thompson, who were lawfully confined in Guild 5 at the Middle Tennessee Reception Center in Nashville sought to escape therefrom. According to plan, Roger Black used a makeshift key to unlock the door to his cell. Later as Correctional Officer Randall White was making his rounds, the officer was struck on the back of his head and knocked to the floor by Roger Black.

Officer White testified that he resisted the efforts of Black to confiscate his keys and radio and during the ensuing struggle was struck repeatedly about the face and head with a drain pipe and sharpened wedge. After being severely beaten and choked the officer surrendered the keys. Roger Black then unlocked other cell doors and released several convicts including his brother William and co-defendant William Thompson who in turn assisted in subduing the officer, taking control of the guild area and actively participating in the escape attempt.

Alerted that something was amiss, several correctional officers hastened to Guild 5 where they found cell doors open and several inmates out of their cells. Holes had been beaten in the screen of a window in the laundry room and the window sill was damaged.

Officer White was found in the shower area. His condition was described by Captain Sanders thusly:

I've been in the department for ten years. I've seen officers hurt before. When I saw Officer White, he was covered with blood. I couldn't tell his face. He had blood coming out of his mouth, his eye. I thought the man was dead. It made me sick to see a man in that condition. I didn't think he was going to make it to the hospital.

This witness went on to describe the area as looking like a slaughter pen where "somebody had tried to butcher somebody." Medical testimony established that Officer White suffered a broken nose and fourteen distinct lacerations to the scalp and face requiring 178 stitches.

The appellants first challenge the constitutionality of Tenn. Code Ann. § 39–5–712.

The State has pointed out that Roger Black and William Black failed to present this issue prior to trial and have thereby waived any right to appellate review on that question. The record reflects that William Thompson filed a pre-trial motion, seeking dismissal of the first count of the indictment alleging that subject statute was in several respects violative of both the Federal and State Constitutions. On July 23, 1985, the trial court overruled this motion without allowing argument.

The statute under which these appellants were convicted reads as follows:

*T.C.A. § 39–5–712 Rebellion with intent to kill or escape.*—If any convict confined in the penitentiary for a term less than life, openly rebel with intent to kill the warden or any other officer thereof, or with intent, by open violence, to escape, he shall, on conviction thereof, be imprisoned in the penitentiary for life.

It is first claimed that this statute is unconstitutionally vague in that it fails to define the words "rebellion" and "open violence" so as to properly apprise the defendant of the meaning and scope of this law.

We would observe at this point that the word "rebellion" does not appear in the body of this statute but is contained in the section heading or "catchline" only and accordingly is not to be construed as part of the law. See T.C.A. § 1–3–109.

A statute is not unconstitutionally vague if the conduct proscribed can be reasonably understood. *Rose v. Locke*, 423 U.S. 48, 49, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). The Tennessee Supreme Court has said that a statute is invalid for vagueness only when persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Pace v. State*, 566 S.W.2d 861, 863 (Tenn.1978). The words of a statute are to be taken in their natural and ordinary sense without a forced construction to limit or extend their meaning. *Ellenburg v. State*, 215 Tenn. 153, 156, 384 S.W.2d 29, 30 (1964).

Rebel, open and violence are not technical terms which require legal research to determine their meaning. Rather, they are words of such common usage as to be easily definable by consulting basic English dictionaries. "Rebel" was defined by the trial judge as meaning "to defy or resist authority." In Webster's *Seventh New Collegiate Dictionary* it is defined thusly, "to oppose or disobey one in authority or control." That work also includes a definition of "open" as "exposed to general knowledge" and "violence" as "the exertion of physical force so as to injure or abuse." Funk and Wagnalls *Standard Desk Dictionary* (1977) includes a definition of "open" as "not secret or hidden" and of "violence" as "physical force unlawfully exercised." We also find therein that "rebel" means, "to resist any authority or established usage; to react with violent aversion."

■ Given the common meaning of these words it is inconceivable that a person of common intelligence would not understand that the conduct of these appellants as heretofore described is proscribed by this statute. Therefore we hold that T.C.A. § 39–5–712 is not unconstitutionally vague.

■ Next, while acknowledging that a state government act does not violate the due process clause of the Fourteenth Amendment if it rationally relates to any possible legitimate end of government, the

appellant contends that § 39–5–712 is without rational basis because the statute governing escapes, T.C.A. § 39–5–702, and riots in prison, T.C.A. § 39–6–345, already protect the State's interest in controlling unruly prisoners. He cites no authority for this novel approach and we know of no constitutional prohibition against the enactment of a penal statute which prohibits conduct that is similar but by no means identical to that prohibited by other statutes.

The appellant also contends that subject statute violates the Equal Protection Clause of the Fourteenth Amendment in that it sets out a classification which is totally unrelated to any legitimate government interest. He complains that the statute as written provides for a life sentence upon conviction for inmates who are serving a term less than life whereas under T.C.A. § 39–5–713 an inmate serving a life sentence who commits this offense is punished by a term of not more than two (2) years in solitary confinement.

The United States Supreme Court has held that the Fourteenth Amendment permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional powers despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan v. State of Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). See also *Matlow v. State,* 125 Tenn. 547, 145 S.W. 177, 180; *State v. Davis,* 654 S.W.2d 688 (Tenn.Crim.App.1983).

Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if

no grounds can be conceived to justify them. *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982).

The so-called "rebellion" statute was first enacted in 1829. It was codified as § 5534 in the 1858 Code. Included in that Code was § 5533 dealing with escape or attempted escape by convicts serving a term less than life and § 5535 which provided that any convict serving a term less than life who conspired with intent to commit the offenses mentioned in § 5534 would be imprisoned for not less than four (4) nor more than ten (10) years. Section 5536 then provided:

If any convict confined in the penitentiary for life is guilty of either of the offenses enumerated in the three preceding sections he shall on conviction be punished by solitary confinement in the penitentiary not exceeding two (2) years at such intervals as the Court may direct.

Under the law as it then existed the Governor had discretion to remit a portion of a prison sentence upon the recommendation in writing of the Board of Inspectors; but parole, probation, credits for good and honor time, and the various other means by which a sentence can now be reduced did not exist. In other words, generally speaking, "life" meant "life."

■ Appropriate punishment being clearly related to the State's interest in controlling the conduct of inmates through effective deterrence, the legislature was well within its authority in determining that such conduct as shown by this proof should be punishable by life imprisonment. In view of the obvious lack of any deterrent effect in imposing an additional life sentence the legislature could reasonably determine that solitary confinement would better serve the purposes of punishment for those convicts already serving a life sentence. Such classification is clearly related to the State's goal of deterring this type crime and is therefore constitutional.

Finally, this Court has recently held that the imposition of a life sentence under T.C.A. § 39–5–712 does not constitute cruel and unusual punishment. *State v. Tony*

*Willis, James Yates and Alex Skinner,* Lauderdale Criminal, C.C.A. No. 3 (opinion filed at Jackson on January 21, 1987) [Available on WESTLAW, 1987 WL 5547]. That case also involved inmates violently beating and injuring correctional officers with the intent to escape from prison.

At the conclusion of the proof William Thompson submitted a special request for a jury instruction regarding the definitions of "open" or "openly" and "rebellion." Roger Black joined in that request. The trial judge refused the request and the appellants allege error.

■ Where words and terms are in common use and are such as can be understood by persons of ordinary intelligence, it is not necessary in the absence of anything in the charge to obscure their meaning, for the court to define or explain them. See *State v. Rollins,* 605 S.W.2d 828, 832 (Tenn.Crim. App.1980); *Robinson v. State,* 513 S.W.2d 156, 158 (Tenn.Crim.App.1974). Open and openly are such words.

As we have heretofore observed, the word "rebellion" does not appear in the body of the statute and is not an element of the offense. It is descriptive of the offense defined therein. In denying the submitted request the trial judge observed that he felt he should instruct the jury as to the meaning of the verb, "rebel" as used in the statute rather than the noun "rebellion." We see no error in this ruling. We also agree with the trial judge that the submitted definition went too far. The trial judge's refusal to give an inaccurate special charge is not reversible error. *State v. Moffett,* 729 S.W.2d 679 (Tenn.Crim.App. 1986).

■ The jury charge as given included an instruction defining "rebel" as meaning "to defy or to resist authority." William Thompson complains that this instruction was insufficient. Under Tennessee law mere meagerness is not reversible error, in the absence of a special request for an additional charge. *State v. Rollins,* 605 S.W.2d 828 (Tenn.Crim.App.1980); *Meade v. State,* 484 S.W.2d 366, 368 (Tenn.Crim. App.1972).

Roger Black contends that his conviction should be reversed because he was severely prejudiced by the prosecuting attorney's failure to provide defense counsel with discovery of certain statements.

The first complaint is directed at an alleged exculpatory statement the defendant made to Captain Raymond Sanders, one of the corrections officers. In this oral statement Roger Black denied attempting to kill Officer White and indicated that he was only seeking to escape when he fought with the officer.

The record is not clear on this point but it appears that the oral statement had been included in a written report prepared by Captain Sanders. The assistant district attorney general stated that he first learned of the statement when he interviewed the captain a few days before trial. Then due to confusion on his part with reference to the defendants and/or their respective counsel, the assistant attorney general discussed the subject statement with counsel for William Black, resulting in an agreement that the statement would be suppressed.

At the end of Captain Sanders' direct testimony, counsel for Roger Black was furnished a copy of the officer's report which included therein the defendant's oral statement. The record reveals that the defendant was then permitted during his cross-examination of Captain Sanders to get this patently self-serving statement before the jury.

■ The defendant cites Rule 16 of the Tennessee Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The record does not support a finding that either was violated here. The oral statement was not introduced by the State and the "exculpatory evidence" was presented to the trier of fact at trial. Furthermore, by special verdict they found the defendants guilty of rebellion with intent to escape rather than rebellion with intent to kill Officer White. In other words, the jury apparently credited the defendant's version that he had no intent to kill—only to escape.

Claiming inadvertence the State admittedly failed to provide defense counsel with two other oral statements made by Roger Black. In the first statement he told Sergeant Charles Mafield that he assaulted Randall White with a piece of chair. The second oral statement wherein Black "admitted the attack and said he opened his own door and struck Officer White on his own and alone" was made to Corrections Officer James Sherrill.

Again defense counsel first became aware of the existence of these statements when they were furnished copies of the officers' reports at the close of their direct testimony. Roger Black sought to suppress both statements; however, the trial judge felt the statements could be exculpatory as to co-defendant William Thompson and allowed him to establish the substance of both statements through cross-examination of the respective witnesses after redacting the name of Roger Black.

Rule 16(a)(1)(A) of the Tennessee Rules of Criminal Procedure provides in pertinent part as follows:

> Upon request of a defendant the State shall permit the defendant to inspect and copy or photograph, ... the substance of any oral statement which the State intends to offer in evidence at the trial....

The assistant district attorney general did not attempt to introduce these oral statements at the trial. In fact, he instructed the officers not to testify as to their contents. The matter became more complex as the trial judge sought to balance the rights of all defendants in this joint trial. We have compared these oral statements with the written statements which were already in evidence and find no major discrepancies. We fail to see where the defendant was in any way prejudiced by the limited reference to these statements especially in view of the fact that the jury found the defendants had rebelled with the intent to escape rather than with intent to kill the officer. There is no merit to this issue.

Likewise without merit is Roger Black's claim that his conviction must be reversed because the prosecuting attorney improperly alluded to the defendant's juvenile record.

In the first place the record supports a finding that the defendant opened the door to this line of inquiry when he cross-examined witness Betty Stiddum as follows:

Q. Do your records reflect whether or not Roger Black had ever been in the Tennessee Department of Corrections as an adult before?

A. Not as an adult, no.

When the State took the witness back on re-direct the following occurred:

Q. Ms. Stiddum, Mr. Grissim asked you the question, "Do your records reflect whether or not Roger Black as an adult offender had ever been in the Department of Corrections before?" Do you recall that question?

A. Yes.

Q. Had he asked you the question, "Had he ever been in the Department of Corrections before," would your answer have been the same?

MR. GRISSIM: Your honor, I object to that.

THE COURT: All right, I sustain the objection.

Upon the defendants' contemporaneous objection the trial court promptly sustained the objection before the witness answered. The trial judge's offer to give the jury a curative instruction was declined by the defendant. However, his general charge to the jury included the following language.

> You must never assume to be true any insinuation suggested by a question asked a witness. The question is not evidence and may be considered only as it supplies meaning to the answer.

Under these circumstances a mistrial was unwarranted and the trial judge properly denied the motion.

In a related issue Roger Black says the prosecuting attorney's failure to provide requested discovery combined with his deliberate improper allusion to the defendant's juvenile record constituted prosecutorial misconduct which prejudiced the judi-

cial process and warrants reversal of the conviction.

We have heretofore examined each complaint and found they did not warrant reversal. Under this record we are satisfied that the complained of conduct "in toto" did not affect the judgment or result in prejudice to the judicial process. We thus conclude that the judgment against the defendant should not be set aside. Rule 36(b) T.R.A.P. See also *State v. Hale*, 672 S.W. 2d 201 (Tenn.1984); *Judge v. State*, 539 S.W.2d 340 (Tenn.Crim.App.1976). Nor does this record support the assertion that the prosecuting attorney's conduct constituted a violation of the Code of Professional Responsibility.

Both Roger Black and William Black claim error in the introduction of certain photographs depicting blood.

Although the brief of Roger Black contains the statement, "The defendant's conviction should be reversed because the trial court improperly admitted many gruesome photographs over the proper objections of defense counsel," we fail to find in the record where the defendant made such objections or joined in those which were in fact made by his co-defendant, William Black. He has thus waived any right to appellate review thereof. Tenn.R.App.P. 36(a).

However, we have examined the questioned photographs and do not find their probative value to be far outweighed by their prejudicial effect as was found to be the case in *State v. Banks*, 564 S.W.2d 947 (Tenn.1978) and *Gladson v. State*, 577 S.W.2d 686 (Tenn.Crim.App.1978) cited by the defendant.

Three of the photographs depict the crime scene, and while they portray substantial bloodstains on the floors and walls they are not gruesome or horrifying. There was no abuse of discretion in admitting them.

The two photographs of the victim's bloody clothing have minimal, if any, probative value and in our opinion they should have been excluded. However, given the proof in this record and the fact that the photographs are small Polaroids (approximately 3 inches by 3 inches) any prejudicial effect, if any, would likewise be minimal. In other words, we are of the opinion that any error in the admission of these photographs did not affect the results of the trial and was therefore harmless.

Finally we look to the issue raised by William Black wherein he says, "The trial court erred in denying appellant's motion to suppress a certain alleged statement or in the alternative to grant a continuance."

In response to the defendant's pre-trial discovery request, the State had provided him with a copy of his written statement. It appears that on July 18, 1985, while preparing for trial the following week, the assistant district attorney general first learned of an oral statement the defendant reportedly made to one of the corrections officers. On that same day he advised defense counsel of the statement and its contents and on the following day provided counsel with a written summary.

On July 22, 1985, defense counsel filed a motion to suppress the oral statement. After a full evidentiary hearing on July 23 (the day of trial) in which the defendant testified and denied making the statement, the trial court denied both the motion to suppress and the motion for a continuance. In so ruling the trial judge specifically found that the assistant district attorney general acted in good faith in providing defense counsel with the contents of subject statement as soon as practicable after learning of its existence. He further found that there had been no showing of any prejudice with regard to the late receipt of the statement.

The prosecutor's duty to disclose extends not only to material in his or her immediate custody but also to statements in the possession of the police which are normally obtainable by "exercise of due diligence," that is, a request to all officers participating in the investigation or preparation of the case. *State v. Hicks*, 618 S.W.2d 510 (Tenn.Crim.App.1981). While there is no showing of "due diligence" on the part of the State to fully comply with

the original discovery request, there was prompt disclosure when the additional material was discovered.

Defendant complains that he was forced to proceed with a suppression hearing on the morning of trial even though a continuance had been requested. The transcript of the suppression hearing shows that defense counsel was fully prepared to present the defendant's challenge and did so effectively. There has been no showing of prejudice or any suggestion as to how a continuance would have been of benefit to the defendant. Any error here was harmless beyond a reasonable doubt.

Finding no reversible error we affirm the convictions and resulting judgments as to each defendant.

O'BRIEN and BYERS, JJ., concur.