IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. SHEILA KAYE COOPER**

**Direct Appeal from the Criminal Court for Anderson County**
**No. 98CR0049    James B. Scott, Jr., Judge**

---

**No. E1999-00220-CCA-R3-CD - Decided June 20, 2000**

---

Defendant Sheila Kaye Cooper was convicted in a jury trial of one count of aggravated robbery and she was subsequently sentenced as a Range I standard offender to a term of eight years. Defendant challenges her conviction, raising the following issues: (1) whether the evidence was sufficient to support her conviction; and (2) whether the trial court erred when it defined the term "violence" in response to a question from the jury. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

WOODALL, J. delivered the opinion of the court, in which TIPTON, J. and GLENN, J. joined.

Michael W. Ritter, Oak Ridge, Tennessee, for the appellant Sheila Kaye Cooper.

Paul G. Summers, Attorney General and Reporter, Peter M. Coughlan, Assistant Attorney General, James N. Ramsey, District Attorney General, and Jan Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  FACTS**

Donna Presley testified that she was shopping at a grocery store at approximately 10:00 p.m. on January 20, 1998. Presley kept her hand on her purse for most of the time that she was shopping, but she momentarily left the purse in the shopping cart at one point while she reached for an item. When Presley let go of her purse, Defendant grabbed the purse and ran toward the front door. The purse contained a checkbook, credit cards, and some cash.

Presley testified that when she saw Defendant with her purse, she instinctively gave chase. Presley caught Defendant at the front door, and they began scuffling. Presley was knocked down during the scuffle, and Defendant ran out the door with Presley's purse. Presley continued the chase into the parking lot where Defendant entered her vehicle, locked the doors, and handed the purse to a man who was sitting in the passenger seat. Presley struck one of the vehicle's windows with her arm in an effort to break the window, but she was unsuccessful.

Presley testified that at this point, her upper body was on the hood area of Defendant's vehicle. Defendant then started her vehicle and "whipped out so fast it threw [Presley] to the ground." Because one of Presley's fingers had become caught on part of the vehicle, the flesh on the end of the finger was torn off and a doctor subsequently had to remove the exposed bone above the joint of the finger. Presley experienced severe pain from the injury, and the injury impaired her ability to use a computer while working as a clerk.

Several witnesses testified that they saw Presley jump on the hood of Defendant's vehicle and they saw Presley fall to the ground when Defendant accelerated her vehicle backward.

Defendant testified that on January 20, 1998, she consumed about $500.00 worth of crack cocaine. That night when Defendant went to the grocery store, she grabbed Presley's purse and ran for the door. Defendant testified that at this point, Presley pulled her to the floor, but she was able to get up and run to her vehicle.

Defendant testified that when she entered her vehicle and locked the doors, Presley began beating on the window and the windshield. Defendant stated that she then looked behind her, put the vehicle into reverse, and backed away. Defendant claimed that once she entered her vehicle, she did not see Presley. Defendant denied ever seeing Presley on the hood of the vehicle.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support her conviction for aggravated robbery.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Under Tennessee law, "[r]obbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). In addition, aggravated robbery is robbery "[w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(2) (1997). Further, "[a] person commits theft of property if, with

intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997).

Initially, we note that there is no dispute that Presley's partially amputated finger qualifies as a "serious bodily injury." See Tenn. Code Ann. § 39-11-106(a)(34) (1997) ("'Serious bodily injury' means bodily injury which involves: . . . [e]xtreme physical pain; [p]rotracted or obvious disfigurement; or [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty"). Likewise, there is no dispute that Defendant intentionally or knowingly obtained Presley's property without her consent and with intent to deprive her of the property. Essentially, Defendant concedes that these elements were established, but argues that the evidence was insufficient to support her conviction because she did not use violence against Presley and she did not cause Presley's serious bodily injury.

We conclude that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that the State established the element of "violence" in this case. The term "violence" is not defined in the Tennessee Code. However, the Tennessee Supreme Court recently defined "violence" as used in the robbery statutes. The supreme court held that "the plain meaning of the element of violence as used in the offense of robbery . . . is evidence of physical force unlawfully exercised so as to damage, injure, or abuse." State v. Tony Fitz, --- S.W.3d---, No. W1997-00186-SC-R11-CD, 2000 WL 359621, at *4 (Tenn. April 10, 2000). The supreme court held that in that case, the defendant's action of shoving a clerk in an aggressive manner that caused the clerk to fall backward constituted violence. Id., 2000 WL 359621, at *3.

Presley testified that when she saw Defendant with her purse, she instinctively gave chase and when she caught Defendant at the front door, the two "scuffled a little bit and [Defendant] started saying for me to leave her alone, calling me a bitch, that she didn't have my purse and just kept hollering and calling me a bitch." In addition, Presley testified that she was knocked down during the scuffle. Further, during the testimony of one of the grocery store employees, the employee described this incident as a "little brawl." Moreover, Presley testified that while her body was on the hood area of Defendant's vehicle, Defendant started her vehicle and "whipped out so fast it threw me to the ground." Defendant's acts of scuffling with Presley and subsequently accelerating her vehicle backward in order to facilitate her theft of the purse and her escape from the crime scene constitute physical force unlawfully exercised so as to damage, injure, or abuse. Thus, the evidence was sufficient to establish the element of violence in this case.

We also conclude that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that the State established that Defendant caused Presley's serious bodily injury. The Tennessee Supreme Court has held that "the crime of robbery is not completed the moment the stolen property is in the possession of the robbers, but may be deemed to continue during their attempt to escape." Burgin v. State, 217 Tenn. 682, 687–88, 400 S.W.2d 539, 541 (1966). Thus, it is irrelevant that Presley sustained serious bodily injury after Defendant had already obtained possession of the purse.

Defendant argues that she did not cause Presley's serious bodily injury and instead, Presley's injury was the result of her own "bizarre conduct." This Court has previously stated that in regard to the causal relationship between a robbery and injury to the victim, the defendant's conduct must be both "1) the 'but for' cause or 'cause in fact' and 2) the 'proximate' or 'legal cause' of the result." State v. Echols, 919 S.W.2d 634, 635 (Tenn. Crim. App. 1995). In Echols, the defendant entered the victim's house and stole a purse while the victim was gathering some garbage to take outside. The victim then fell and broke her hip after she ran outside to call for help. This Court held that this evidence was sufficient to support a conviction for aggravated robbery because the victim's act of quickly exiting the house to scream for help and look for the defendant was a natural and probable response to the defendant's conduct. Id. This Court stated: "that the victim's own conduct may also be a proximate cause of her injury is of no consequence to the defendant's situation. One whose wrongdoing is a concurrent proximate cause of an injury may be criminally liable the same as if his wrongdoing were the sole proximate cause of the injury." Id. (citation and internal quotations omitted).

As in Echols, the fact that the victim in this case engaged in conduct that contributed to her injury does not render the evidence insufficient. Presley's acts of chasing Defendant and even getting on the hood of Defendant's vehicle were events that were entirely foreseeable and in fact, were the natural and probable responses to Defendant's criminal misconduct. Moreover, even if Presley's conduct of getting on the hood of Defendant's vehicle was somehow unforeseeable, it was clearly foreseeable that Defendant's conduct of rapidly backing her vehicle out of its parking space while Presley was on the hood would cause Presley to be thrown to the ground and become injured. Although Defendant claimed that she never saw Presley on the hood of her car, she expressly admitted that she heard Presley pounding on the windshield. In addition, a bystander testified that Presley was on the hood of the vehicle "right next to" the windshield. "The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." State v. Cribbs, 967 S.W.2d 773, 793 (Tenn. 1998). The jury obviously found that Defendant's claim was not credible and concluded that Defendant was aware that Presley was on the hood when she "whipped" her vehicle backward and caused Presley to be thrown to the ground. Thus, the evidence was sufficient to establish that Defendant's criminal misconduct was both the "but for cause" and the "proximate cause" of Presley's serious bodily injury.

In short, we conclude that when the evidence is viewed in the light most favorable to the State, as it must be, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Defendant had committed the offense of aggravated robbery. Defendant is not entitled to relief on this issue.

## III. DEFINITION OF VIOLENCE

Defendant contends that the trial court erred when it defined the term "violence" in response to a question from the jury.

The record indicates that during deliberations, the jury asked the trial court the following question: "As it pertains to aggravated robbery, what is the definition of the term 'violence' in element four?" In response, the court instructed the jury:

> All right, I further charge you that violence is the unjustified or unwarranted exercise of force or threat of force. This term is not statutorily defined and you should use your common sense to consider the law given.

The trial court then submitted the following written instruction to the jury:

> Violence is the unjust or unwarranted exercise of force or threat of force. This term is not statutorily defined and you should use your common sense to consider the law given.

Defendant initially claims that the trial court erred when it gave the above definitions because it did not instruct the jury that it should not place undue emphasis on the definitions. However, as previously stated by this Court:

> The trial court has the authority to respond to jury questions with a supplemental instruction. While the better procedure is to admonish the jury not to place undue emphasis on the supplemental instruction and to consider it in conjunction with the entire charge, it is not necessarily reversible error to fail to do so.

State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995) (citation omitted). Thus, the trial court did not commit reversible error simply because it failed to instruct the jury not to place undue emphasis on the definitions.

Defendant also argues that the above definitions of "violence" were so inaccurate and misleading that they prevented her from having a fair trial.

Clearly, the trial court's definitions of violence are inaccurate under the Tennessee Supreme Court's definition set forth in Fitz, 2000 WL 359621, at *4. However, Fitz was not decided until approximately one and one half years after the trial in this case and the trial court's definitions were not tremendously different from the definitions provided by legal authority existing at the time.

Tennessee Code Annotated section 39-11-104 provides that the provisions of the criminal code "shall be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations . . . ." Tenn. Code Ann. § 39-11-104 (1997) (emphasis added). In State v. Black, 745 S.W.2d 302, 304 (Tenn. Crim. App. 1987), this Court stated that

> Rebel, open and violence are not technical terms which require legal research to determine their meaning. Rather, they are words of such common usage as to be easily definable by consulting basic English dictionaries. . . . In Webster's Seventh New Collegiate Dictionary . . . "violence" [is defined] as "the exertion of physical force so as to injure or abuse." Funk and Wagnalls Standard Desk Dictionary (1977) includes a definition of . . . "violence" as "physical force unlawfully exercised."

In addition, Black's Law Dictionary, 1570 (6th ed. 1990), defines violence as "[u]njust or unwarranted exercise of force, . . . [p]hysical force unlawfully exercised, . . . [t]he exertion of physical force so as to injure, damage or abuse." Moreover, this Court has provided similar definitions for "violence" in opinions released after the trial in this case. See e.g., State v. Tyris Harvey, No. 03C01-9710-CC-00447, 1999 WL 2837, at *2 (Tenn. Crim. App., Knoxville, Jan. 6,

1999), <u>app. granted, cause remanded</u>, (Tenn. Oct. 11, 1999) (defining violence as "physical force unlawfully exercised" or "[u]njust or unwarranted exercise of force"); <u>State v. Tony Fitz</u>, No. 02C01-9712-CC-00486, 1998 WL 725936, at *2 n.3 (Tenn. Crim. App., Jackson, Oct. 19, 1998), <u>affirmed on other grounds</u>, <u>Fitz</u>, 2000 WL 359621, (defining violence as the "[u]njust or unwarranted exercise of force . . . [p]hysical force unlawfully exercised; abuse of force . . . [and] [t]he exertion of any physical force so as to injure, damage or abuse"). Although the Tennessee Supreme Court ultimately concluded in <u>Fitz</u> that these prior definitions of violence were not entirely accurate as used in the robbery statutes, it is easy to understand why the trial court defined "violence" as it did.

Even under the authorities existing at the time of trial, the trial court's definitions of violence were erroneous in that they defined violence as "force", rather than "physical force", and they indicated that a "threat of force" also constituted violence. However, we conclude that any error in the trial court's definitions of violence was harmless beyond a reasonable doubt. We have already concluded that Defendant's action of participating in the scuffle with Presley in which Presley was knocked down and Defendant's action of accelerating her vehicle backward so rapidly that Presley was thrown on the pavement satisfy the definition of violence under <u>Fitz</u> because the actions involved physical force unlawfully exercised so as to damage, injure, or abuse. Moreover, the record is devoid of any evidence of "force" that was not "physical force" and the record is devoid of any evidence of a "threat of force". Thus, the jury could not have relied on any "nonphysical force" or any "threat of force" as a basis for conviction. Under these circumstances, we are confident that any error in the trial court's definitions was harmless beyond a reasonable doubt. Defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.