IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2003

## STATE OF TENNESSEE v. JAMES ANTHONY HILL

**Direct Appeal from the Circuit Court for Marshall County**
**No. 15188      Charles Lee, Judge**

---

**No. M2003-00516-CCA-R3-CD - Filed March 9, 2004**

---

The defendant, James Anthony Hill, was convicted of possession of a weapon in a penal institution, a Class C felony, and sentenced as a Range III, persistent offender to thirteen years in the Department of Correction.  On appeal, he argues:  (1) the trial court erred in not instructing the jury as to the lesser-included offense of possession of a prohibited weapon; (2) the evidence was insufficient to support his conviction; and (3) his sentence is excessive.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); Donna Leigh Hargrove, District Public Defender; and Andrew Jackson Dearing, III, Assistant Public Defender, (at trial and on appeal), for the appellant, James Anthony Hill.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

Marshall County Jail Administrator Betty Chumbley testified that on July 9, 2002, the defendant was an inmate housed in the D cell block.  Prior to that day, she had inspected all of the cell blocks and found that the air conditioning vent in the defendant's cell was covered with wet toilet paper.  She told the defendant to clean out the vent but did not furnish him with a tool, or instruct him to make a tool, with which to clean it.  After the defendant was moved from the D cell block to a segregation cell on July 9, 2002, Correctional Officer Larry Spivey turned over to her a

"shank," or handmade knife, which he found on the defendant's person. Chumbley identified the shank, which was admitted into evidence, describing it as "a piece of metal, some type of metal that has been folded. There is a point at the end of it. It is wrapped in cloth on one end, as like a handle." On cross-examination, she acknowledged that the shank could have been used to clean the toilet paper out of the air conditioning vent in the defendant's cell.

Correctional Officer Joanne Sellars testified that she was working the 6:00 a.m. to 6:00 p.m. shift on July 9, 2002, at the Marshall County Jail. While she was serving lunch to the inmates in the D cell block, the defendant, disgruntled that lunch again consisted of tuna fish sandwiches, made a vulgar comment to her. After Sellars informed the defendant that she would not tolerate that type of language, the defendant called her "bitches, whores, fat ass bitches" and said he knew where she lived. The defendant also told her that he "was sick of everybody punking him out," that there "[w]asn't any kind of bitch going to stand there and tell him what to do," and that he was "going to gut [her] like a pig" when he got out of jail. Sellars informed Chumbley that she wanted the defendant placed in lockdown for "disrespecting an officer and using the language that he did." Sellars and three other correctional officers then moved the defendant from the D cell block to a lockdown cell.

Correctional Officer Allen Moorehead testified that he assisted other officers in moving the defendant from the D cell block to a holding cell on July 9, 2002. After Correctional Officers Larry Spivey and Jeff Henson had received "some information," Spivey conducted a pat-down search of the defendant and discovered a weapon in the defendant's sock.

Correctional Officer Larry Spivey testified that, after receiving information that the defendant possibly had a weapon, he and Henson went to the holding cell where the defendant had been placed to search for the weapon. While patting down the defendant's right leg, Spivey discovered "something in his sock" around the ankle area. The defendant then handed him "a metal shank-type object," which Spivey described as "an item approximately six inches long, and had the handle wrapped with a cloth to use the handle. It was pointed." In Spivey's opinion, the point of the weapon was sharp and there was another sharp edge where a piece of metal had been bent upward.

The fifty-two-year-old defendant testified that he was an inmate in the Marshall County Jail on July 9, 2002, serving a six-month sentence for passing a worthless check. Prior to that day, Chumbley had conducted an inspection and instructed him to clean the toilet paper out of the air conditioning vent in his cell. When he told Chumbley that he did not put the toilet paper in the vent and did not have anything with which to clean it, Chumbley replied, "Find something to clean it out with." After trying to use an ink pen which broke, the defendant asked Trusty Ray Usury to bring him a screwdriver, but Usury brought a folded "piece of tin" instead. The defendant then "took a sock or rag, wrapped it around it, and commenced to clean the vent out." The defendant said he only put the rag around the tin to avoid cutting his hand while cleaning the vent. He spent a total of six hours cleaning the vent because it was very difficult to remove the toilet paper.

The defendant admitted taking the shank with him when he was moved from the D cell block and that he had hidden it inside his clothing. Officers subsequently conducted a "random shakedown," and inmates were brought out into the hallway and searched. Correctional Officer Allen then "came out with a bag of all types of whatever – that they found." When Correctional Officer Spivey asked him if he had any contraband, the defendant handed him the piece of tin but said that it was in his pants, not his sock. He denied that the shank was intended to be used as a weapon and said that if he had wanted a weapon, he could "get a real knife in the Marshall County jail off the street, a real knife, not a piece of tin, a real knife." The defendant said that he did not threaten anyone with the shank but acknowledged that it could have been used as a weapon.

The defendant denied threatening or cursing Correctional Officer Sellars but admitted arguing with another inmate. He said that Sellars had testified contrary to him because she was intimately involved with his cousin, Paul Hurt, with whom he did not get along. The defendant also said that when Correctional Officer Spivey arrived at the MTCC in Nashville to transport him, he overheard Spivey tell another officer, "I am going to set [the defendant] up. I'll be bringing him back to you." The defendant said that his six-month sentence had expired on July 2, that he had been held in jail a week after his "out date," and that he had been charged with the instant offense because he was "being singled out in a conspiracy . . . to keep [him] in jail." The defendant admitted having the following prior convictions: attempt to commit a felony, aiding and abetting a robbery, burglary, theft of property, and passing a worthless check.

## ANALYSIS

### I. Failure to Instruct on Lesser-Included Offense

The defendant argues as his first issue that the trial court erred in failing to instruct the jury on the offense of possession of a prohibited weapon, which, by his argument, is a lesser-included offense of possession of a weapon in a penal institution. Although the trial court determined that this offense was a lesser-included offense of the charged offense, it concluded that such an instruction was unnecessary because under the facts of the case "[n]o rational trier of fact could find this did not occur in a penal institution." The State argues on appeal that the trial court was incorrect in its determination because the offense of possession of a prohibited weapon has at least one statutory element not included in the felony offense, namely, that the weapon be a deadly weapon.

In every criminal case, the trial court has a duty to instruct the jury on any lesser-included offense of the offense charged for which the evidence would support a conviction. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001). Whether a court properly instructed a jury concerning lesser-included offenses is a mixed question of law and fact, and, therefore, the standard of appellate review is *de novo* with no presumption of correctness. Id.

The following definition of "lesser-included" offenses was adopted in State v. Burns, 6 S.W.3d 453, 466-67(Tenn. 1999):

An offense is a lesser-included offense if:

(a)     all of its statutory elements are included within the statutory elements of the offense charged; or

(b)     it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

    (1)   a different mental state indicating a lesser kind of culpability; and/or

    (2)   a less serious harm or risk of harm to the same person, property or public interest; or

(c)   it consists of

    (1)   facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

    (2)   an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

    (3)   solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

The analysis which a trial court must utilize in identifying the lesser-included offenses to be charged to the jury was explained in Burns, 6 S.W.3d at 469:

First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense. This two-step analysis is practical, can be easily applied by the trial courts, and remains broad enough to preserve both the State's and defendant's rights to consider any lesser-included offenses fairly raised by the proof.

-4-

The defendant was charged with and convicted of possession of a weapon in a penal institution, which is defined as follows:

It is unlawful for any person to:

(1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title.

(2) Knowingly possess any of the materials prohibited in subdivision (a)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution.

Tenn. Code Ann. § 39-16-201(a).

The offense of possession of a prohibited weapon, which the defendant claims also should have been charged, is defined, in pertinent part, as follows:

A person commits an offense who intentionally or knowingly possesses, manufactures, transports, repairs or sells:

. . . .

(8) Any other implement for infliction of serious bodily injury or death which has no common lawful purpose.

Tenn. Code Ann. § 39-17-1302(a)(8).

During the trial of this matter, the State and defense had agreed that possession of a prohibited weapon was a lesser-included offense of the indicted offense of possession of a weapon in a penal institution, with the State arguing, however, the evidence did not require that the lesser offense be charged. The trial court agreed and did not charge the jury as to possession of a prohibited weapon. The defense contended at trial and on appeal that possession of a prohibited weapon was a lesser offense and should have been charged. The State has changed its position on appeal, arguing now that possession of a prohibited weapon is not a lesser-included offense of possession of a weapon in a penal institution, and, even if it were, any error in not charging it was harmless. Normally, we would not consider the State's changed position, presented for the first time on appeal, it being "'elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this

Court.'" State v. Adkisson, 899 S.W.2d 626, 635-36 (Tenn. Crim. App. 1994) (quoting State v. Dobbins, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988)). However, for the correct resolution of this matter on appeal, we must determine whether possession of a prohibited weapon is a lesser-included offense of possession of a weapon in a penal institution.

In reviewing this matter, we note first the State's argument on appeal that while Tennessee Code Annotated section 39-16-201(a) proscribes possession of "any weapon[]" in "any penal institution," section 39-17-1302(a)(8) proscribes, *inter alia*, "[a]ny other implement for infliction of serious bodily injury or death which has no common lawful purpose." Thus, according to the State's argument, misdemeanor weapon possession cannot be a lesser-included offense of felony possession of a weapon in a penal institution, for the felony prohibits possession of "any weapon," while the misdemeanor adds the additional element that the weapon be "for infliction of serious bodily injury or death which has no common lawful purpose." We concur with this analysis that the offense of possession of a prohibited weapon requires more than that the implement be simply a "weapon." Accordingly, under part (a) of the Burns test, possession of a prohibited weapon is not a lesser-included offense of possession of a weapon in a penal institution. We conclude, as well, that it is not a lesser-included offense under Burns part (b), for both have the same mental state, "knowingly," and because a more dangerous weapon is required to violate the misdemeanor, the risk of harm resulting from its violation appears to be no less, and perhaps greater, than possession of a "weapon" in a penal institution. Burns part (c) being, likewise, inapplicable, we conclude that misdemeanor possession of a prohibited weapon is not a lesser-included offense of possession of a weapon in a penal institution.

Even if the defendant were correct that misdemeanor possession of a prohibited weapon is a lesser-included offense of possession of a weapon in a penal institution, any error in not charging it to the jury would have been harmless. All witnesses, including the defendant, himself, testified that the events occurred in the Marshall County Jail. Additionally, the defendant testified that the "shank" was not a deadly weapon but, in fact, was a folded piece of tin, which he was using with a sock as a handle to clean out a vent in the jail. Thus, to convict the defendant of possession of a prohibited weapon, the jury would have to disregard all witnesses and conclude that the events did not occur in the Marshall County Jail and find, contrary to the defendant's explanation of its benign use, that the shank was "for infliction of serious bodily injury or death [and had] no common lawful purpose." See State v. Richmond, 90 S.W.3d 648, 663 (Tenn. 2002) (error in not instructing as to lesser-included offenses was harmless beyond a reasonable doubt because "no reasonable jury would have convicted the defendant on the lesser-included offenses of robbery and attempted robbery instead of the charged offenses due to the uncontroverted and overwhelming evidence establishing the use of deadly weapons and his direct participation in the offenses").

## II. Sufficiency of the Evidence

As his second issue, the defendant argues that the evidence was insufficient to support his conviction, saying that "[t]here was no evidence adduced at trial from which the jury could find that the piece of metal found on [the defendant] was legally defined as a 'weapon.'" Additionally, he

-6-

argues that the piece of metal was not designed or adapted for the purpose of inflicting bodily injury, but rather as a tool for the removal of toilet paper from his air conditioning vent. The State disagrees.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The trial court instructed the jury on the definition of a weapon as follows: "Weapon means an instrument of offensive or defensive combat or anything manifestly designed, made, or adapted for the purpose of inflicting bodily injury or anything that in the manner of its use or intended use is capable of causing bodily injury." This court has held that a "'weapon' is not a technical term which requires legal research to determine its meaning; in this context, its meaning can be ascertained by person of common intelligence." State v. Joseph John Henry Morrell, No. E1999-00924-CCA-R3-CD, 2000 WL 218188, at *2 (Tenn. Crim. App. Feb. 25, 2000) (citing State v. Black, 745 S.W.2d 302, 304 (Tenn. Crim. App. 1987)), perm. to appeal denied (Tenn. Dec. 11, 2000).

The evidence at trial showed that a sharpened piece of metal was confiscated from the defendant, an inmate in the Marshall County Jail, after he was moved from one cell block to another. Correctional Officer Spivey, who found the shank on the defendant's person, testified that it was approximately six inches long and had a sharp point and another sharp edge. Additionally, Jail Administrator Chumbley testified that the shank had a point on one end and had been wrapped with a cloth to form a handle. Correctional Officer Sellars testified that the defendant had threatened her, saying he was "going to gut [her] like a pig" once released from jail. The defendant himself testified that the shank could have been used as a weapon. Accordingly, we conclude that the jury reasonably could have found the piece of metal confiscated from the defendant was a weapon.

### III. Sentencing

As his final issue, the defendant argues that his thirteen-year sentence is excessive. Although the defendant concedes that the enhancement factors applied by the trial court were appropriate, he argues that the court erred in failing to apply mitigating factor (1), his "criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1).

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

In declining to apply mitigating factor (1), the trial court stated:

> Now, there are several different types of contraband that may be in a facility. In this case, this was an instrument, according to the State's theory, that could be used to harm someone else.
>
> It is true there is no evidence in the record that the instrument was used to harm some one, or that any one else was actually threatened with the instrument. But the State's theory is the instrument was available for ready use.
>
> The Court does not find, at the defendant's insistence, that the defendant's conduct neither caused nor threatened serious bodily injury.

The trial court determined that two enhancement factors were applicable, the defendant's five admitted prior felony and misdemeanor convictions, see Tenn. Code Ann. § 40-35-114(2), and his unwillingness to comply with the conditions of a sentence involving release into the community based upon his prior parole revocation, id. § 40-35-114(9). To these factors, the court attached "considerable weight." Thus, even if the trial court erred in not applying as a mitigating factor that the defendant's conduct neither threatened nor harmed others, the slight weight which this factor might have merited would not have affected the sentence imposed.

### CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE